**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-743-FDW**

| | |
|---|---|
| **LESLIE SANCHEZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| **FNU HILL, et al.,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1). Plaintiff has been granted in forma pauperis status. (Doc. No. 6).

**I.     BACKGROUND**

Pro se Plaintiff Leslie Sanchez, a North Carolina prisoner currently incarcerated at Piedmont Correctional Institution, filed this action on October 27, 2016, pursuant to 42 U.S.C. § 1983, naming the following three individuals as Defendants: (1) FNU Hill, identified as a correctional officer at the Mecklenburg County Detention Center; (2) FNU Drummah, identified as a correctional officer at the Mecklenburg County Detention Center; and (3) FNU Davis, identified as a sergeant at the Mecklenburg County Detention Center. Plaintiff alleges that while he was a pre-trial detainee at the Mecklenburg County Detention Center, Defendant officers Hill and Drummah negligently failed to follow protocol, resulting in two inmates assaulting Plaintiff

1

on July 8, 2016.[1]  As to Defendant Davis, Plaintiff alleges that Davis wrongly told him that he could not press charges against the two inmates who attacked him.  To support his claims, Plaintiff alleges the following facts in the Complaint:

> On 7/8/16 on A Shift Officer Hill and Drummah were the two officers that was assigned to Block 5600 where I was housed called DDU a/k/a segregation unit. There are 3 sides 5625, 5630, and 5640.  5625 is for regular seg, 5630 is for protective custody and 5460 is for Max, a step down from reg seg 5625.  At 3:00 p.m. Officer Hill allowed me to do my hour of rec on the recreation yard.  I started walking laps around the yard.  I noticed about 2 min later that Hill had allowed inmate Young out of his cell free handed.  Officer Drummah was in the booth and had knowledge of this and every other protocol that Officer Hill broke that I'll let you know about.  They both broke protocol because they were working partners. Officer Hill and Young were holding a light conversation while Drummah was standing at both door monitoring their conversation.  When I saw Young talking to Hill, I was very puzzled like I said earlier Young was free-handed, meaning no handcuffs.  Inmate Young was actually supposed to be in full restraints anytime he exits his cell by any type of authority because of certain very bad decisions he's made in the past.  I also remember earlier that morning Young had already been out for his recreation that morning in the block we both we both were [sic] in 5640 by himself like always because he was put on paperwork and in the computer system to be in full restraints anytime for his past actions and he was not in full restraints that morning either.  There is a camera in 5040 and paperwork of when any inmate did rec.  This was twice in the same day and then Officer Hill opened up the cleaning supply closet and allowed him access to cleaning supplies.  When Hill left Young to the closet and all supplies, Officer Drummah had a seat, talked on the telephone and looked straight ahead, and monitored everything that was taking place.  Young went in 5640 and was cleaning out his cell when he was suppose[d] to had [sic] done it that morning when he's doing his rec.  Everybody in 5640 is allowed 1 hr. a day to do rec and they have the option to clean their cell at that time. I was noticing Young go to his cell for 30 seconds at a time and walk around block a little and hold conversation with other inmates, and walk out block a few times. As Young was doing this, I noticed Officer Hill went to the 5625 side and allowed inmate Lee out of his cell without his full restraints also.  Yes Inmate Lee was on paperwork and computer for assaulting an officer.  How I know because I was on the 5625 side before 5640 doing my regular seg time.  Most inmates in 5640 was

---

[1] In the Complaint, Plaintiff also refers to another incident that allegedly occurred on August 24, 2016.  However, other officers were involved in that incident, and Plaintiff has filed a separate action arising out of that incident, naming as Defendants the officers involved in that incident.  That separate action is also pending in this Court.  See Sanchez v. Cooper, 3:16cv855 (W.D.N.C.).

in 5625 before 5640. 5640 is so-called max, a low class step down from regular population. These blocks are segregation blocks, supposed to be the highest and tightest security levels of the jail and supposed to be the safest. Inmate Young would go back and forth from 5640 side to 5625 at the entrance, and hold conversations with inmates he knew also. Both 5625 and 5640 side sliders was both open the whole entire time by officer Drummah, when only one slider is to be open at a time for all types of security reasons and safety. A couple minutes later Officer Hill was bringing inmate Lee out of his cell without his full restraints also on the 5625 side. Inmate Lee only had on handcuffs and allowed him to use the telephone. Officer Hill stood there about 2 min then walked off again and roamed around again. Inmate Lee and I have had verbal differences in the past, and I'm feeling like all of this that was going on with both inmates, and officers could have been some major agreement and set up. Inmate Young knew of my past differences with Lee. Young would walk to 5625 side, and hold a conversation with Lee a couple times while Hill wasn't around. There was a camera in 5625 also. Inmate Young then walked up to the recreation door, which is to be locked at all times once any inmate is doing rec for safety reasons, and the whole time I was out there, I even thought Officer Hill had locked it, because I watched him make motion with his keys as if he locked it. But I see that he faked me out. Inmate Young grabbed the door handle and turned it, and it was unlocked. Young hurried at that moment gave Lee the go ahead, and opened the door. Lee put phone down, looked at officer Drummah not paying him any attention. Lee walked through slider, him and Young entered the recreation yard, and jumped me. I was eventually knocked down, and they continued to punch me, kicking me and stomping their feet all over my face, head, neck, and back. I was badly hurt, and couldn't barely move. Young went and grabbed a toilet bowl brush and plunger he already had out, and him and Lee used them as weapons on me. Inmate Lee used the wooden part of plunger to assault me in the face, arm, head with striking motions, and on my neck back and side of head and ear with stabbing motions. If that wooden part would have broken in any ways, he could have killed me. Young was using the toilet brush striking my face, head, and scrap[ing] my skin on arms right and left. They used the weapons for about 1 min, then they finally stopped, and left off rec yard leaving behind toilet brush and plunger. Inmate Young locked himself down to his cell on 5640 side and Lee went back to the telephone on the 5625 side smiling and holding conversation. Officer Hill had just showed back up on the 5625 side stood in front of Lee for a few min. I regained a little energy and I was also so upset. I left rec yard and walked in 5625 then Officer Drummah called for back-up, me and Lee squared up, he tripped me I was slow to get back up because of energy, Officer Hill started walking Inmate Lee upstairs. I followed them. I noticed officers and sergeants entering. I turned around and left out 5625 with sergeant Davis and another female sergeant. They walked me back to the rec yard and asked me what happened? How did you get those bruises and your [sic] bleeding on your arm, you got a cut. I explained everything and they were both telling me they gonna escort me to medical, they then placed handcuffs on me. As we were walking, I pointed

3

to the cleaning materials that inmates Lee and Young used on me as weapons on me. They were very shocked. As we were walking down the hallway, I asked both sergeants can I press charges on inmates Lee and Young for their actions and using cleaning materials as weapons on me. Both sergeants told me no I couldn't, that I would have to wait till whenever I am released from jail. I was very confused of this and felt like there was some injustice there, and some more nonprofessional actions taken. All of this stuff that had occurred cause me plenty of stress, trauma, anxiety, paranoia, being very upset, and all of the physical pain and injuries I endured. Till this day, I have very bad mental health issues, all of what I just mentioned and can't hardly sleep at night, very verbally aggressive towards anybody, my nerves are shot up, I twitch a lot and all of my physical pains have greatly increased. While I was at medical the male nurse spoke with me and did his job properly, asked me all places I was attacked, and was hurting. He saw physical bruises and cut on arm, and made notes of everything that he was and I told him about and he leaned up my cut on arm. Capt McFadden had came back to medical about 45 minutes later, and had a camera and took pictures on my visual physical injuries and damages that was done to me. McFadden then pulled out a sheet of paper and paper and asked me what all happened to me? I told him detail for detail. Captain McFadden was very shocked of actions by officers Hill and Drummah. I also informed him of Lee and Young using cleaning materials as weapons, that shocked him also, and that Young had free access to closet. Capt. McFadden then left.

(Doc. No. 1 at 3-11) (grammatical and spelling errors in original corrected). As relief, Plaintiff states that he seeks to have Defendants Hill and Drummah "fired of their jobs" as a result of the "protocols broken" by these Defendants. (Id. at 4). He further states that he also seeks "suspension" of Defendant Davis "for lying to me about my rights to press charges on inmates Lee and Young for what all they did to me." (Id.). Plaintiff seeks "moneys for all of these protocols being broken and the injuries I endured, and bills I will have to pay for in future for my injuries and pain, and my mental health issues." (Id.).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore,

4

under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III.     DISCUSSION**

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted). As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotation marks omitted). Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Id. at 834.

5

"Deliberate indifference" in this context is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Id. at 835-37. It is not sufficient that the official should have known of the risk. Id. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." Id. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. See also Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015).

A claim of negligence is not cognizable in a civil action under § 1983. See, e.g., Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (prison officials' lack of due care in failing to protect an inmate from an attack by another inmate not rise to the level of a constitutional violation); Ruefly v. Landon, 825 F.2d 792, 793 (4th Cir. 1987) ("Mere negligent conduct on the part of prison officials who fail to protect a prisoner from a risk of harm posed by fellow inmates does not constitute a violation of the eighth amendment's prohibition against cruel and unusual punishment."). Moreover, § 1983 does not general impose liability for violations of duties of care that may arise under state law. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200-03 (1989).

Plaintiff has failed to state a claim for a violation of his Eighth Amendment rights against Defendants Hill, Drummah, and Davis. Plaintiff alleges no facts tending to show that Defendants had any knowledge that inmates Lee and Young were going to assault Plaintiff. At most, Plaintiff alleges facts tending to show that, before inmates Young and Lee assaulted Plaintiff in the recreation yard, Defendants Hill and Drummah were negligent for failing to follow alleged protocols that required inmates Young and Lee to be in full restraints while out of

their cells.  These allegations, while possibly alleging negligence, simply do not rise to the level of deliberate indifference for purposes of stating a cognizable claim for an Eighth Amendment violation.² See Jackson v. Sampson, 536 Fed. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished) (a defendant's failure to follow prison rules or regulations does not, without more, rise to the level of a constitutional violation).  Finally, as to Plaintiff's purported claim against Defendant Davis, even assuming that Defendant Davis told Plaintiff he could not file charges against inmates Lee and Young while he was still in jail, these allegations do not state a cognizable claim for a violation of a federal constitutional right against Defendant Davis.

## IV. CONCLUSION

For the reasons stated herein, this action is dismissed for failure to state a claim.

**IT IS, THEREFORE, ORDERED** that:

1. This action is dismissed for failure to state a claim.  See 28 U.S.C. § 1915(a).

2. The Clerk is instructed to terminate this action.

Signed: March 8, 2017

Frank D. Whitney
Chief United States District Judge

---

² Furthermore, to the extent that Plaintiff speculates that Defendants Hill and Drummah "could have . . . some major agreement and set up" with inmates Young and Lee for Plaintiff to be assaulted, Plaintiff's allegation of a "set up" is wholly conclusory.  Accord Bynum v. Fed. Bureau of Prisons, No. 07-CV-0915, 2007 WL 2693648, at *3 (W.D. La. Aug. 13, 2007) (dismissing the plaintiff's Eighth Amendment claim on initial review based on an assault by other inmates, stating that "[t]o the extent that the Officer was inattentive and neglectful, Plaintiff's claim is one of negligence, which is insufficient to state a claim for relief.  To the extent Plaintiff contends that Officer David conspired with other officers and set Plaintiff up for the assault, Plaintiff's argument is conclusory and unsupported by facts."), appeal dismissed, 278 F. App'x 362 (5th Cir. 2008).

7